IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
RECEIVED EASTERN DIVISION

UNITED STATES OF AMERICA,
      Respondent,

      v.

MORRIS RAMSEY,
      Movant.

)
)
)
)
)
)

3:05 CV 426-T

CR.NO.94-025-E

## MOTION FOR VOIDING DRUG WEIGHT ENHANCEMENT FOR LACK OF JURISDICTION AND RE-SENTENCE WITHIN DEFINED RANGE AUTHORIZED BY JURY VERDICT

**COMES NOW**, MORRIS RAMSEY, movant, pro se, and hereby moves this honorable court to declare the drug weight enhancement in his sentence void ab initio for lack of jurisdiction and legally re-sentence movant in accordance with the laws of the United States. In support thereof, the movant states as follows:

1.      Movant presents an issue of [f]irst [i]mpression in this circuit, namely:

"[T]he jurisdiction of a district court in a mandatory system of sentencing."

2.      This motion is a direct attack on the jurisdiction of the court to sentence movant in violation of the laws of the United States. Jurisdiction may be challenged at any time:

> "Since jurisdictional error implicates a court's power to adjudicate the matter before it, such error can never be waived by parties to litigation; the doctrine of procedural default does not apply."

**U.S. v. PETER**, 310 F.3d 710 (11th Cir. 2002)

### BACKGROUND

Movant and others allegedly participated in a large crack cocaine distribution ring in Lanett, Alabama. Following a jury trial in March, 1994, movant was convicted on two counts: **COUNT 1**: Conspiracy to distribute and possess with intent to distribute a schedule II controlled substance in violation of Title 21,U.S.C. §§841(a)(1) and 846. **COUNT 23**: Distribution

-1-

of 1.403 grams of cocaine base in violation of Title 21 U.S.C. §841(a)(1).
During trial the jury heard evidence that the co-consirators were involved
in 16 covert buys in a six month period, totalling 112 grams of controlled
substance. At sentencing, movant argued that he should be sentenced within
offense level 3 2 and being responsible for between 50-150 grams of cocaine
base. The trial judge on a preponderance of the evidence found that it was
inconceivable that movant was not responsible for at least 150 grams and
sentenced movant to 169 months (level 34).

Following unsuccessful direct appeal, movant attacked his sentence
pursuant to 28 U.S.C.§2255. The magistrate judge granted movant's motion
on the ground that appellate counsel acted ineffectively by failing to
raise the "individualized findings" argument successfully pursued on appeal
by three co-conspirators.

On November 29, 1999, the district court held an evidentiary hearing
and received new evidence to help it determine the quantity of drugs movant
should be held responsible for. Based on the testimony of co-defendants
who entered into agreements with the Government for reduced sentences, the
court utilized this testimony, along with trial transcripts, to craft
individualized findings regarding drug quantity on a preponderance of the
evidence. Based on a total offense level of 40, movant was sentenced to
300 months of imprisonment.

Movant appealed arguing that the re-sentencing violated **Apprendi v.
New Jersey,** 120 S.Ct.2348 (2000) in that the court made factual findings
by a preponderance of the evidence standard which produced sentences of
the 20 maximum prescribed by 21 U.S.C. §841. In an unpublished opinion,
the Eleventh Circuit remanded the case back to the district court for re-
sentencing or a new trial..

-2-

On remand, movant argued that he was entitled to be re-sentenced **de novo** because his previous sentence had been vacated by the Eleventh Circuit. The district court without the benefit of a new evidentiary hearing sentenced movant to a total of 292 months, consisting of 232 months imprisonment on count 1 and 60 months imprisonment on count 23, to run consecutively.

Under the total offense level (40), movant could have been sentenced under the guidelines to 292 to 365 months imprisonment. However, the statutory maximum sentence per count on the counts movant was convicted is 20 years imprisonment, 21 U.S.C. §841(b)(I)(C).

In a published opinion, **United States v. Davis**, (IIth Cir., 02-10402, May,8, 2003), the Eleventh Circuit held that U.S.S.G. §5G1.2(d) applied and that **"the district court was obligated to follow the guidelines."** [emphasis added]. The guidelines mandated a consecutive sentence "whenever necessary to produce a sentence equal to the total punishment."

The maximum sentence the district court could have imposed was the aggregate sentence on each count and being 40 years. Accordingly, the court properly interpreted §5G1.2 to impose consecutive sentences on movant, because the sentence did not exceed the statutory maximum on each count.

Movant now attacks the jurisdiction of the district court in imposing a sentence, part of which was illegal, as it was not authorized by the jury verdict alone, in a mandatory system of sentencing.

## SUMMARY OF ARGUMENT

Movant was sentenced under a mandatory sentencing system. For all intents and purposes the Sentencing Guidelines are laws because they are binding in nature. The district court had original jurisdiction

hear and decide the case but that adjudication was circumscribed within the bounds of the Sentencing Guidelines, statutes, the Constitution and the jury's verdict. The guidelines were designed on an offence level points system, whereby upon a finding of a fact, additional points would be added to a base level offense. The guidelines mandated that it was impermissible for a sentencing judge to depart from an authorized offence level, either upwards or downwards, unless aggravating or mitigating factors were found under §3742(e). Any unauthorized departure is illegal and would require automatic reversal of the sentence imposed. A district court has no authority or jurisdiction to impose a sentence outside the defined range of an offense level.

The Fifth Amendment guarantees that any fact that increases punishment has to be proved beyond a reasonable doubt. That standard of proof cannot be waived by a defendant. The Sixth Amendment guarantees that elements of an offense are found by a jury. In a mandatory system of sentencing, the maximum sentence a district court can impose is not the statutory maximum, but the maximum sentence on the facts supported in a plea agreement or the jury's verdict alone. Any additional facts, have to be found by a jury beyond a reasonable doubt, otherwise they are unauthorized, illegal, violate a defendants' Fifth and Sixth Amendment rights and exceed a court's jurisdiction. The sentencing hearing, amounted to a second trial, with a defacto indictment called a pre-sentence report of the probation officer. Based on pleadings in the report, the trial judge then convicted the defendant on a preponderance of the evidence test and increased defendant's punishment.

Moavant cannot be resentenced under the new advisory system because it is more burdensome and would violate the principles of the Ex Post Fact Clause. The only appropriate remedy is to [v]oid the illegal part of movants' sentence.

-4-

## ARGUMENT

The Supreme Court in **UNITED STATES v. COTTON**, 535 U.S.625 (2002), 152 L.Ed 2d 260, 122 S.Ct. 1781, narrowed the definition of jurisdiction to mean "the court's statutory or constitutional power to adjudicate the case." (quoting from **STEEL CO v. CITIZENS FOR BETTER ENVIROMENT**, 523 U.S.83,89, 140 L Ed 2d 210, 118 S Ct 1003 (1998). This concept of subject-matter jurisdiction appears to confine the definition of jurisdiction to the authority of the court to hear the case.

Title 18, United States Code, section 3231 states: "The district courts of the United States shall have the original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States." In as much as movant was convicted   .   of violating Title 21 U.S.C. §§846 and 841(a)(1), the Court had original jurisdiction. See, **UNITED STATES v. SANCHEZ**, 269 F.3d 1250, 1274 (11th Cir. 2001), cert denied, 535 U.S. 942 (2002). It is noted that **SANCHEZ**, supra at 1274, states that the Apprendi ruling does not have jurisdictional implications.[1]

In **SANCHEZ**, two defendants plead guilty to conspiring with the intent to distribute a controlled substance in violation of 21 U.S.C. §841 pursuant to an indictment lacking an allegation of drug quantity and were sentenced to terms of 87 months and 68 months respectfully. **SANCHEZ**, 269 F.3d at 1257. Sanchez appealed arguing that     indictments lacking an allegation of drug quantity constituted reversible error under **APPRENDI** or **UNITED STATES v. ROGERS**, 228 F.3d 1318 (11th Cir. 2000) Id at 1270. The Court rejected the argument holding that:

---

1. However **SANCHEZ** was clearly wrongly decided in light of the Supreme Court's decision of **UNITED STATES v. BOOKER**, 534 U.S. --, 125 S.Ct. --, 2005 WL 50108 (Jan 12, 2005). A careful review of **SANCHEZ** also reveals that the Court only referenced that there was no jurisdictional implication in a defective indictment. The issue of whether a court has jurisdiction to sentence a defendant for offenses not contained in an indictment was never addressed in either **SANCHEZ** or **COTTON**.

> "In a §841 case in which a defendant's ultimate
> sentence falls at or below the statutory maximum
> penalty in §841(b)(1)(C) there is no Apprendi error
> and the drug quantity need not have to be submitted
> to a jury and proven beyond a reasonable doubt."
> **SANCHEZ**, 269 F.3d at 1270

Because the sentences in **SANCHEZ** were below the 20 year maximum specified in

§841(b)(1)(C), "there was no error at all under Apprendi or Rogers." id

According to **SANCHEZ**, relevant conduct may also be proved by a preponderance

of the evidence so long as the maximum penalty for the crime is not exceeded.

Under a mandatory sentencing system, "the statutory maximum" for

**Apprendi** purposes is the maximum a judge may impose **soley on the basis of**

**facts reflected in the jury verdict or admitted by the defendant."** ( **BOOKER**,

quoting from **BLAKELY v. WASHINGTON**, 524 U.S. _____ (2004), at (slip op.,

at 7). **SANCHEZ**, simply wrongly defined the definition of statutory maximum.

In so doing the Court mistakenly concluded that drug quantity for calculating

the offence level under the sentencing guidelines need not be submitted to a

jury and may be proved by a preponderance of the evidence. See id, **SANCHEZ**,

at 1276 & n.50 (11th Cir. 2001). The Court failed to take into acount the

mandatory nature of the sentencing guidelines and that all elements of the

offence that increase punishment had to be found by a jury beyond reasonable

doubt.[2]

Shortly after **SANCHEZ**, the Supreme Court in **COTTON**, held that insofar

as a defective indictment deprives the court of jurisdiction **EX PARTE BAIN**,

121 U.S.1, 30 L Ed 849, 7 s Ct 781 (1887) was overruled. Freed from the

constraints that indictment omissions deprive the court of jurisdiction, the

Supreme Court preceded to apply the plain error test of Federal Rule of

Criminal Procedure 52(b) to the respondents' forfeited claim. The omission of

---

2.    Ironically in an Advisory system of sentencing SANCHEZ no longer
      violates a defendant's Fifth and Sixth Amendment rights.

a drug quantity whilst violating Due Process, did not deprive the Court of jurisdiction and as the drug quantity was overwhelming and uncontraverted, the error did not affect the fairness, integrity, or public reputation of judicial proceedings. **COTTON** id. at 868. In making its' ruling the Supreme Court did not consider a defendants' Sixth Amendment violation, nor was the court's jurisdiction in a mandatory sentencing system raised. **COTTON** only applies in an advisory sentencing system, otherwise it would have been raised in **BOOKER**. It is inopposite to the issues before this court.

As the Supreme Court noted in **BOOKER**, the sentencing judge would have been reversed had he invoked the departure section of 18 U.S.C. §3553(b)(1) to justify a sentence above the maximum allowed by the jury verdict. id. **BOOKER** at 10. Further, a sentencing judge is not authorized to sentence a defendant above the statutory maximum even under the rational of **SANCHEZ**. It is also clear that a sentencing judge derives his authority to sentence a defendant upon a jury verdict and it would be impermissable for him to sentence a defendant acquitted at trial of all counts. International treaties also prevent courts from trying defendants for offences not certified by the extraditing country under the Rule of Speciality. A sentencing judge has no authority to give a defendant 21 years if the statutory maximum prescribes 20 years.

It follows that a district court's jurisdiction is limited to adjudicate in compliance of both Statutes and the Constitution that empower it to do so. Any departure from that mandate is [u]nauthorized and <u>exceeds its jurisdiction</u>.

Once jurisdiction is challenged, the burden is on the government to prove it had jurisdiction. See **UNITED STATES v. WILL**, 449 U.S. 200, 66 L

Ed 2d 406 F.N. 199 (1980). The case at bar is not about the court's jurisdiction to hear the case, but the court exceeding its jurisdiction in adjudicating in circumstances where the drug weight movant was sentenced on was different to that contained in the indictment; not presented to a petit jury and found beyond a reasonable doubt; above the maximum sentence authorized by the juries verdict and outside the maximum authorized by the Statute itself.

Movant puts the government's burden to test to show by argument or case law, that the court did not exceed its jurisdiction and why the jurisdictional defect should not render that part of movant's sentence [u]nauthorized and [v]oid. The Supreme Court was required to excise the offending sections §§3553(b) and 3742(e) because while those sections remained operative, their presence violated a defendant's Fifth and Sixth Amendment rights. It follows that the unconstitutional part of movant's sentence should also be excised otherwise his Fifth and Sixth Amendment rights remain [v]iolated.

1.  **DID THE DISTRICT COURT EXCEED ITS JURISDICTION TO SENTENCE MOVANT FOR DRUG WEIGHT NOT CONTAINED IN THE INDICTMENT**

Freed from the contraints of **COTTON**, which only applies to an "Advisory Sentencing System", movant examines established federal law exclusive of **BLAKELY** or **BOOKER**.

The Fifth Amendment provides that "no person shall be held to answer for a capitol or otherwise infamous crime unless on presentment of indictment "of the Grand Jury." The purpose of the indictment is to inform the accused of the nature of the charges against him – it is well recognized that another purpose is to be served by the requirement that an indictment set forth the essential elements of the offense. "This purpose as defined in **UNITED STATES v. CRUIKSHANK**, 92 U.S. [Otto] 542, 558, 23 L Ed 588, 593, is

-8-

"to inform the court of the facts alleged, so it may **decide** [emphasis added] whether they are sufficient in law to support a conviction, if one should be had." **RUSSELL v. UNITED STATES**, 369 U.S. 749, 768. 82 S Ct 1038, 1049, 8 L Ed 2d 240 (1962)(quoting from **CRUIKSHANK**, at 558).

Indictments protect the defendant and benefit the prosecution by making it possible for courts to hear and decide whether an offense has been committed. The Eleventh Circuit considered of greater relevance is that it would hinder the court's task of reviewing the conviction, "as well as an affront to our criminal justice system to permit an accused to be subject to jeopardy, based on facts which were not presented or found by a grand jury." **U.S. v. ITALIANO**, 837 F.2d, 1480, 1486 (11th Cir. 1988).

The Sentencing Guidelines are mandatory and binding on judges. See **MISTRETTA v. UNITED STATES**, 488 U.S. 361, 367 (1989). also **BOOKER**, slip op 9 and footnote 2); id **DAVIS**, where 11th Circuit held it was mandatory for district court to impose consecutive sentence in movants' case. Because of the binding nature the Supreme Court has consistently held that they have the force and effect of laws. id **BOOKER**, (quoting from **MISTRETTA** at 391 and **STINSON v. UNITED STATES**, 506 U.S.36, 42 (1993). For all intents and purposes, the Sentencing Guidelines are laws and enhancements are offences within those laws. If this were not the case, then in a mandatory system, punishment would be increased for an act that is not an offence against the United States and the jurisdiction would be defective.

The Eleventh Circuit may wish to call them "extra-verdict enhancements," but **whatever their form,** they have the force and effect of offences. If a judge determines that an enhancement under the guidelines has been violated, it is mandatory for him to increase the defendant's sentence. Accordingly, all facts necessary to establish punishment are required to be plead in an indictment, otherwise they cannot be placed before a jury for a

determination of guilt beyond a reasonable doubt.[3]

The ability to defend oneself in a meaningful way is fundamental to the concept of a fair criminal justice system in a democratic society that values freedom and a person's liberty.

The right of a defendant in a federal felony case to be indicted by a grand jury is designed to protect "citizens against vindictive prosecutions, either by the government or by political partisans, or by private enemies.[4] This is accomplished by limiting a person's jeopardy "to offences charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."[5]

The function of a grand jury is to determine whether there is probable cause that the defendant has committed acts that constitute an offence against the United States. It is difficult to see how that function can survive in a meaningful way, when probable cause and guilt is determined by a sole employee of the government, who is not even a judicial officer.[6]

The reality is that a Pre-Sentence Report is a defacto indictment. It is a presentment "of the probation officer", working in concert with the prosecutor, the findings of which are then adopted by the judge. Behind closed doors, everybody knows that the present federal criminal justice system is a sham. It is a licence for the prosecutor to force a defendant to plead guilty or co-operate and penalize those defendants refusing to, or brazen enough to go to trial. There is no independence in a pre-sentence report. The movant was convicted of a drug weight estimated by the probation officer. To be sentenced to many more years of incarceration on an estimation with a burden of a preponderance of the evidence is outrageous.

---

3.   The Petit Jury receives its authority to determine guilt or innocence
     on presentment or indictment of a Grand Jury.
4.   I.J.Story, Commentaries on the Constitution of the United States
     § 1779, at 658 (1833)
5.   **STIRONE v. UNITED STATES**, 361 U.S. 212,218, 4 L ed 2d 252 (1960)
6.   **UNITED STATES v. CLARK**, 412 F.2d 885 (5th Cir. 1969) Where the Fifth
     Circuit held that a probation officer was not a judicial officer.

A bureaucratic hearsay riddled pre-sentence report is an unreliable vehicle to determine guilt or innocence. That jurisdictional defect, stripped the court of its power to act and made its judgement in relation to facts not found by a jury beyond reasonable doubt [v]oid. See **ESCARENO v. CARL NOLTE SOHNE GMBH**, 77 F.3d 407, 412 (11th Cir. 1996).

2.    **DID THE COURT EXCEED ITS JURISDICTION TO SENTENCE MOVANT ON FACTS NOT PRESENTED OR FOUND BY A PETIT JURY BEYOND REASONABLE DOUBT.**

The Constitution gives a defendant the right that a jury find him guilty of all elements of the crime for which he is charged." **UNITED STATES v. GAUDIN**, 515 U.S. 506, 511 (1995). It also protect every defendant "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for which he was charged." **IN RE: WINSHIP**, 397 U,S, 364 (1970).

These are basic precepts that have nothing to do with the retroactivity of **BOOKER**, but are firmly rooted in the common law and Constitution.

A sentencing court receives its jurisdiction from statutes, the constitution and the jury verdict which is based on offences presented in the indictment. In a mandatory sentencing system, "regardless of whether Congress of the Sentencing Commission concluded that a fact must be proved in order to sentence a defendant within a particular range, "[t]he Framers would not have thought it too much to demand that before depriving a man [ten] more years of his liberty, the state should suffer the modest inconvenience of submitting its accusation to the unanimous suffrage of twelve of its equals and neighbours, rather than a lone employee of the state." id **BOOKER**, 13 (quoting from **BLAKELY v. WASHINGTON**, 542 U.S. at ____(slip op 18).

Whether the facts are called "enhancements", "elements", "relevant conduct", or as Justice Breyer in **BOOKER** chose to call, "post

verdict acquired real conduct information", the characterization of those facts are irrelevant to whether they increase a defendant's punishment, because when they do, they must be found beyond a reasonable doubt. id **IN RE: WINSHIP**. In a mandatory system the finding of a fact on a preponderance of the evidence violates established precedent and is not reliant on the retroactivity of **BLAKELY** or **BOOKER**. Movant relies on **IN RE: WINSHIP**.

Booker's case however illustrates the mandatory nature of the guidelines. The jury convicted him of possessing 50 grams of crack in violation of 21 U.S.C. §841(b)(1)(A)(iii) based on evidence that he had 92.5 grams of crack in his duffel bag. Under these facts the guidelines specified an offense level of 32, which given the defendant's criminal history category, **authorized** [emphasis added] a sentence range of 210-262 months.......The sentencing judge would have been reversed had he not imposed a sentence within the 32 guideline range. id **BOOKER**, Justice Stevens, at 10.

Booker's actual sentence, however was 360 months, almost ten years longer than the guideline range supported by the jury verdict alone. To reach this sentence, the judge found facts beyond those found by the jury, that Booker possessed 566 grams of crack in addition to the 92.5 grams in his duffel bag. The jury never heard any evidence of the additional drug quantity and the judge found it true by a preponderance of the evidence. Thus just as in **BLAKELY**, "the jury's verdict alone **did not authorize the sentence.**" id **BOOKER**, 10,11.

The judge acquires that authority upon finding some additional facts and that acquisition violates **IN RE: WINSHIP**. The [u]nauthorized acquisition of authority, is no [a]uthority at all.

In movant's case, the jury only heard the controlled buy of 1.403 grams of cocaine. That weight, together with other distribution counts

-12-

on which co-conspirators were convicted  gave a combined weight of 112 grams of cocaine base. The jury verdict alone supported a sentencing defined range of between 121-151 months [50-150 grams of cocaine base]. At the initial sentencing hearing, the amount of drugs involved in the conspiracy was increased because the judge found on a preponderance of the evidence that it was improbable the conspiracy involved less than 150 grams. After movant's successful §2255, the district court vacated movants' previous sentence of 169 months and set a new  sentencing schedule.  Two co-defendants who enetered into agreements with the government for reduced sentences in exchange for testimony against movant at resentencing then provided uncorroborated evidence of additional transactions increasing the total weight in the conspiracy.  Movant was ultimately resentenced to 292 months based substantially on this hearsay riddled testimony, accepted by the court to be true on a preponderance of the evidence. The jury were never able to assess the demeanor and credibility of the government witnesses or heard any evidence of additional drugs.

On remand from the Appellate court to resentence movant in light of **APPRENDI**, the court refused to even conduct an evidentiary hearing, let alone allow those facts to be found by a jury beyond reasonable doubt. Movants' sentence above level 32, exceeded the court's jurisdiction because it was [u]nauthorized by the jury verdict alone and could not be authorized by an unconstitutional statute.

The Framers of the Constitution understood the threat of "judicial despotism" that could arise from "arbitary punishments upon arbitary convictions", without the benefit of a jury in a criminal case. The Federalist No 83, p.499 (C.Rossiter ed 1961)(A.Hamilton id **BOOKER**, at 14. The Supreme Court noted in **APPRENDI**:

-13-

> "[T]he historical foundation for our recognition of
> these principles extends down the centuries into the
> common law, '[T]o guard against the spirit of oppres-
> sion and tyranny on the part of the rulers,' and as
> the great bulwark of [our] civil and political liberties,'
> trial by jury has been understood to require that **the
> truth of every accusation,** whether preferred in the
> shape of indictment, information, or appeal, should
> afterwards be confined by the unanimous suffrage of
> twelve of [the defendant's) equals and neighbours.'"
>                         530 U.S., at 477 (citations omitted).

If as the  Eleventh Circuit claimed that it is an **affront to
our criminal justice system**, for a defendant to be subject to jeopardy based
on facts not presented or found by a [G]rand [J]ury, does the same not hold
true when the facts are not presented or found by a jury beyond reasonable
doubt?

The  inescapable  [r]eality  is  that  it  is  an affront  to  any
civilized  criminal  justice  system  to  have  defendants  accused  not  in  an
indictment  of  the  grand  jury,  but  in  a  bureaucratic  hearsay  riddled  pre-
sentence  report  "of  the  probation  officer."  An  affront  to  have  those  same
hearsay  riddled  facts  adopted  by  a  sentencing  judge  on  a  preponderance  of  the
evidence  and  an  affront  to  make  such  a  finding  that  **mandates**  a  court  imposing
a  mandatory  punishment  upon  an  arbritary  conviction,  without  the  benefit  of  a
jury.  Have  the  courts  not  indeed  developed  the  very  "judicial  despotism"  and
"arbitrary  punishment  upon  arbitrary  conviction"  the  [F]ramers  identified?

3.          **DID THE COURT EXCEED ITS JURISDICTION TO SENTENCE
            MOVANT ABOVE THE MAXIMUM SENTENCE AUTHORIZED BY
            THE JURY'S VERDICT ALONE AND OUTSIDE THE MAXIMUM
            AUTHORIZED BY THE STATUTE ITSELF.**

As  in  **SANCHEZ**,  the  district  court  assumed  that  upon  a  finding
of  guilt  by  the  jury,  movant  could  be  sentenced  on  any  facts  acquired,
provided  that  the  ultimate  sentence  was  within  the  prescribed  statutory
maximum.  That  rational  ignored  the  mandatory  nature  of  the  Sentencing

-14-

Guidelines. The rational is wrong not because of **BOOKER**, but because of the mandatory system itself.

Movant does not rely on the retroactivity of **BOOKER**. The [e]rror is not that a judge (by a preponderance of the evidence) determined facts under the guidelines which increased the sentence beyond that authorized by the jury verdict, the [e]rror is that the judge did so in a Mandatory Guideline System, and thereby exceeded his [a]uthority and [j]urisdiction.

There is no doubt that the court had jurisdiction to adjudicate the case on all facts found by the jury beyond a reasonable doubt. But once the indictment capped the drug weight and the jury verdict was returned without a special verdict on the weight, the judge was simply not authorized to find additional facts that allowed him to increase movant's sentence.

What the court did, was to conduct a second trial, not based on an indictment but a pre-sentence report. Then the judge sitting alone, and not a jury, convicted the movant not on a burden of proof beyond a reasonable doubt, but on a preponderance of the evidence. That second trial and that's what it was, clearly violated deeply rooted precepts in the Constitution recognized in **GAUDIN** and **IN RE: WINSHIP**. In fact, it amounted to double jeopardy.

The court most certainly had the jurisdiction to conduct the first trial but it had absolutely no authority to conduct a second trial under the guise of a sentencing hearing and pronounce a mandatory punishment upon and arbitrary conviction.

Movant was found guilty of violating 18 U.S.C.§ 846 in that he conspired to possess and distribute and did distribute crack cocaine in violation of 21 U.S.C. §841(a)(1). Based on the jury verdict alone 112 grams

-15-

of controlled substance entitled the court to sentence movant within the defined range of level 32 : §2DI.4 (50-150 grams). The court was only authorized to impose a sentence within the defined range of level 32 and being 121-151 months. The Sentencing Guidelines mandated that before the court was authorized to sentence movant in a higher offense level, additional facts were required to be found to justify such increase. **GAUDIN** and **APPRENDI** required those facts to be found by a jury. **IN RE: WINSHIP**, required those facts to be found beyond a reasonable doubt.

This is not an issue of a court's abuse of discretion. The only discretion the court had was within the defined range of 121-151 months. When the court acquired jurisdiction to go beyond the authorized range, it violated movants' Fifth and Sixth Amendment rights and that part of the sentencing process was unconstitutional.

The maximum sentence a court could have imposed on COUNT 1 was not the statutory maximum, but 151 months. Movant was also convicted of distributing 1.403 grams of controlled substance. The offense level for that amount of drugs is 18 and being a defined range of 27-33 months. The maximum sentence authorized by the jury verdict alone on COUNT 2 was 33 months. The aggregate maximum sentence on both counts was 184 months. The court was not authorized exceed the maximum sentence even under the rational of **SANCHEZ**. The ultimate sentence of 292 months, violated **APPRENDI**, and exceeded the court's jurisdiction because that part of the sentence was unconstitutional as it violated movants' Fifth and Six Amendment rights.

The Supreme Court in **BOOKER**, unanimously agreed that any additional fact not authorized by the jury verdict is unconstitutional. **IN RE: WINSHIP**, is the controlling authority in a Mandatory Sentencing System. Movant's substantial rights were clearly affected and movant requests this court to correct the error that seriously affects the fairness and integrity or public reputation of the judicial proceedings.

-16-

4.       **COURT MAY NOT VACATE CONVICTION OR SENTENCE
         AS IT WOULD VIOALTE DUE PROCESS AND EX POST
         FACTO CLAUSE.**

Movant went to trial in March, 1994 in excess of 11 years ago. Any attempt to re-try movant would violate the statute of limitations and the Due Process Clause, having regard to the delay and years that have now passed. Both the government and the defendant would have great difficulty in presenting or defending a new trial. The drug weight would have to be plead in the indictment and that inclusion would violate the indictment clause and also due process. A new trial is not a viable option.

Nor is the matter as simple as vacating the sentence and making a de novo review as the court originally did in movants' case. Movant is entitled to have every fact that increases his sentence determined by a jury beyond reasonable doubt. Under the mandatory system of sentencing a jury can not now be convened in order to decide those facts. Due process violations also make that option unavailable and impractical.

The government will no doubt argue that movant can be resentenced under the new advisory system of sentencing created by the majority in **BOOKER**. Movant avers that as part of his sentence was unauthorized, illegal and unconstitutional, the court has no option but to declare that part void ab initio. However for the following reason, the advisory system is more burdensome and movant is protected from being resentenced under the advisory system by the Ex Post Fact Clause.

In order to overcome the constitutional violations,the Supreme Court excised two sections of the Sentencing Reform Act that mandated sentencing courts to impose sentences within the guideline range unless there was a reason to depart. The excised sections are 18 U.S.C. §§3553(b) and 3742(e). Without those sections in place, the Court reasoned, the Guidelines no longer establish different "statutory maximums" for each level of offense. Thus the **Blakely** principle is not violated.

-17-

Without these two sections, most of the Sentencing Reform Act stands, but under the surviving portions, the Guidelines are merely advisory. Courts must still calculate and consider the guideline range as well as any gounds to "depart". What they dont' have to do is sentence within the range (even if there is no basis to depart).

Upon a plea agreement or jury verdict of "guilty", it appears **Booker** allows for consideration factors previously precluded from consideration under the guidelines, as well as unusual factors present in a case. In addition, 18 U.S.C. §3662 provides that "no limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court......may receive and consider for the purposes of imposing an appropriate sentence."

This essentially means that enhancements that were unconstitutional before **Booker** can now be taken into account under the new advisory system. If it was improper for a Judge to use unconstitutionally tainted facts pre **Booker**, it is difficult to comprehend how those same facts could now be considered [r]easonable. Yet that is exactly what the Eleventh Circuit concluded in **United States v. Rodrigues**,                , when it opined that a defendant on direct appeal who failed to raise a **Blakely** error could not satisfy the plain error test. As justification it stated that the defendant's substantial rights were not affected because a Sentencing Court may now use the same unconstitutional enhancements re-sentencing the defendant. At no time did the Eleventh Circuit consider the use of such facts would be unreasonable [not to mention improper].

Nor did the Rodrigues Court consider special considerations which protect defendants who committed crimes before January 12th, 2005 [the date the Supreme Court decided **Booker**] and defendants who are being re-sentenced.

-18-

Because **Booker** in effect rewrote an important aspect of the Sentencing Reform Act, defendants are protected by Supreme Court Cases such as **Marks v. United States**, 423 U.S. 188 (1977), which holds that Due Process protects a defendant from the ill-effect of judicial rewriting of statutes, when the rewriting of statutes occurred after a defendant committted his crime, more or less the same way that the Constitution's **Ex Post Facto** Clause protects against retroactive legislation.

It is interesting to note that the Sentencing Commission as at this date has not amended the Sentencing Guidelines to excise §§3353(b) and 3742(e). The government may wish to argue that the ex post facto clause does not apply because the statute was not amended. However, there can be no doubt that the Supreme Court re-wrote the sentencing guidelines because the invalidation of two provisions of the SentencingReform Act of 1984, which were not unconstitutional in and of themselves, changed the operation of the Act from a mandatory system to an advisory one. The issue of re-writing is fully addressed in the dissenting opinions in **Booker** on the new rule of constitutional law by the remedial opinion. In either event, either the ex post facto clause applies or its principles as formulated by the Supreme Court in **Marks.**

Courts must apply the guidelines that are in effect on the date that the defendant is sentenced. See 18 U.S.C. §3553(a)(4)(A)(i); U.S.S.G. §1B1.11. Indeed on April 30, 2003, Congress amended §3553(a)(4) to provide that courts must apply any changes made by Congress, even if not yet incorporated into the official sentencing guidelines. 18 U.S.C. § 3553(a)(4)(A)(i) (courts shall consider the current guidelines "subject to any amendments made to such guidelines by Act of Congress (regardless of whether such amendments have been incorporated by the Sentencing Commission

-19-

into amendments issued under 994(p) of Title 28))." PROTECT Act, Pub.L.108-21, §401(j)(5).

Notwithstanding this statutory requirement, the ex post fact clause in Article 1, §9, cl 3 of the United States Constitution prohibits retroactive increases in punishment. **Collins v. Youngblood**, 497 U.S. 37,42 (1990). Hence, if a court determines that a current guideline and any applicable amendments, "makes more burdensome the punishment for a crime after it's commission the court cannot apply the amendments but must instead apply the guideline in affect at the time the offense was committed. Id

In his opinion for the Court in **Beazell v. Ohio**, 269 U.S. 167, 70 L.Ed 216, 46 S.Ct. 68 (1925) Justice Stone explained:

> The constitutional prohibition and judicial interpretation of it rest upon the notion that laws, <u>whatever their form</u>, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that the criminal quality attributable to an act, either by legal definition of the offense, or by the nature or amount of punishment imposed for its commission should be altered by legislative enactment, after the fact, to the disadvantage of the accused." Id., at 170, 70 L.Ed 216, 46 S.Ct. 68

The bulk of ex post facto jurisprudence has involved claims that a law has inflicted "a greater punishment, than the law annexed to the crime when committed." **Calder v. Bull**, 3 Dall 386, 390 1 L.Ed 648 (1798) Four categories of ex post facto laws were described by Justice Chase:

1. Every law that makes an action done before passing of the law, and which was innocent when done criminal and punishes such action.

2. Every law that aggravates a crime, or makes it greater than it was, when committed.

3. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.

4. Every law that alters legal rules of evidence and receives less or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender." Id at 390

-20-

The United States Supreme Court has clearly resolved that because the Guidelines were binding on judges they had the force and effect of laws. See **Booker** [Justice Stevens at 9], e.g. **Mistretta v. united States,** 488 U.S. 361, 391 (1989); **Stinson v. United States,** 508 U.S. 36,42 (1993). All enhancements <u>whatever their form</u> are laws. If the application of those laws were unconstitutional, then it must be held the laws were void ab initio.

However, according to the Eleventh Circuit in **Rodrigues,** the remedial decision in **Booker** now allows a district court to use a bureaucratic, hearsay riddled Pre-Sentence Report based on a preponderance of the evidence [in fact any standard that is reasonable]. It follows that if under the mandatory system of sentencing only juries could find elements of the offense and the government's burden of proof was beyond a reasonable doubt. By changing the factfinder from "jury to judge" and the burden of proof from "beyond a reasonable doubt," to a preponderance of the evidence [or lower], the new advisory system now makes:

(a)    Innocent actions criminal because a defendant could be innocent under a reasonable doubt test but guilty under a preponderence of the evidence test. The standard of proof is critical for determination of weight of drugs, the amount of money involved in the fraud, leadership role in offence and obstruction of justice. The government conceded in its Reply Brief in **Booker,** that it will be much more difficult to prove these violations beyond a reasonable doubt.

(b)    can aggravate a crime on the findings of a judge alone; (which would run contrary to both **Ring** and **Schriro.**)

(c)    changes the punishment and inflicts a greater punishment, than the law annexed to the crime because enhancements for leadership role, vulnerable victim, mass marketing, obstruction of justice and a multitude of other enhancements were required to be found by a jury beyond a reasonable doubt; and

(d)    Under 18 U.S.C. § 3662 no limitation may be placed on the information a sentencing court can receive and consider for the purposes of imposing an appropriate sentence. Accordingly the rules of evidence have been changed that now allows a court to sentence a defendant provided such sentence is reasonable and within the goals of 18 U.S.C. 3553(a).

-21-

Furthermore, under the Sentencing Guidelines, offences arising out of the same conduct were required to be grouped. Nothing now prevents courts from stacking sentences in violation of the spirit of Apprendi.

The remedial decision in **Booker** runs contrary to the intentions on Congress. Uniformity was accomplished not by judicial factfinding but by a rigid points system that sentencing courts were mandated to follow. It is the mandatory nature of the sentencing guidelines that makes the former sentencing system less burdensome on defendants because every fact that increases a sentence has to be plead in the indictment and found by a jury beyond reasonable doubt. For **Apprendi** purposes, the maximum sentence a judge could impose was not the  statutory maximum but a sentence **"soley on the basis of facts reflected in the jury verdict or admitted by the defendant"** [Blakely, slip op.,at 7] and those facts were required to be proved beyond a reasonable doubt.   Simply, the burden of proof is higher in a mandatory system than an advisory system for a determination of the same facts that may increase a sentence.

Respondent Fanfan was charged with conspiracy to distribute at least 500gms of cocaine in violation of 21 U.S.C. §§846, 841(a)(1) and 841(B)(ii). He was convicted by a jury after it answered "YES" to the question "Was the amount of cocaine 500gms or more?" Under the Guidelines, without additional findings of fact, the maximum sentence authorized by the jury verdict was 78 months. His sentence was constitutional. It was mandated that he could not receive a sentence above 78 months under the former guidelines.  By changing the system from mandatory to advisory, he now faces the prospect of a higher sentence for additional weight of drugs and an enhancement for organizer, leader or manager , or supervisor of a criminal activity. As the standard for making those findings can now be on a preponderance of the evidence, it must

-22-

be held that any increase in punishment violates the ex post facto clause and cases such as **Marks.**

Clearly, all four categories of ex post facto laws are being violated by the new advisory system of sentencing. The role of the jury has been demoted to nothing more than a gate keeper. In fact an underlying offense in an Indictment may warrant a defendant receiving Five (5) years imprisonment but the enhancements in a Pre-Sentence Report can add another 15 years and inflict greater punishment.

It appears that a Pre-Sentence Report has greater weight than an Indictment. That is what makes the Advisory system harsher and an affront to the Fifth Amendments promise that "no person shall be held to answer for a capital, or otherwise infamous crime unless on a presentment or indictment of a Grand Jury." A defendant no longer answers an indictment, but a pre-sentence report which is nothing more than a product of a probation officer in concert with the prosecutor who then has a sentencing judge rubber stamp the findings.

The new standard for punishment is more burdensome on defendants and the great importance which the common law attaches to indictment by grand jury is being frittered away until its value is now almost destroyed.    The Eleventh Circuit in **Rodrigues** concluded that:

> **It makes little or no sense to say that there probably
> would have been a different sentence but for the use
> of extra-verdict ehancements, and on that basis alone
> send the case back for another round in which the very same
> enhancements are to be used again."**

If the rational of Judge Carnes in **Rodrigues** were correct, then the Supreme Court in **Booker**, would not have remanded the case back for re-sentencing. Whilst it may be nice to use the new phraze "extra verdict enhancement", it remains a constitutional violation which the court was not authorized to use.

-23-

The question as to whether a defendant's substantial rights are affected if re-sentenced is not whether he could receive the same sentence but what [l]egal sentence he could have received under the mandatory sentencing guidelines <u>but for the violations of his Fifth and Sixth Amendments.</u>

The fact that a defendant can now receive the same sentence under the Advisory System does not remedy the unconstitutionality in the mandatory system.   Legal conduct, has   now been made illegal and the government's burden of proof reduced to a point where a jury's verdict is but another filling in the ham sandwich.

## CONCLUSION

Movant  avers  that  in a  mandatory  sentencing  system,  the jurisdiction  of  the  court  is  prescribed  by  the  jury  verdict  and  the Sentencing Guidelines. Any  attempt  by  the  court  to  depart  from  that authorized, exceeds its jurisdiction. An [u]nauthorized sentence is illegal and necessitates the illegal part being declared void.

The District Court had original jurisdiction to hear the case and even decide an appropriate sentence by way of a sentencing hearing. But it was only entitled to obtain any information, hearsay riddled or otherwise to sentence movant within the defined range of 121-184 months.

The Court however unwittingly and erroneously believed it was entitled to find additional facts and relied on the Sentencing Guidelines for its  acquisition  of  authority.  Ironically  in  a  mandatory  system,  the guidelines  gave  no  such  authority  and  to  the  extent  it  did,  was [u]nconstitutional because it violated movants' Fifth and Sixth Amendment rights. An unconstitutional authority is no [a]uthority at all and is void ab initio.

-24-

The Supreme Court in **BOOKER** unanimously acknowledged that the mandatory system system was unconstitutional and excised sections §§3553(b) and 3742(e) to make the guidelines "Advisory". The remedial solution may have repaired the future, but it blatantly ignored the illegality and unconstitutionality of the past. As the excise was delcared expressly not to be retroactive, it must be held that and sentences in the past that were [u]nauthorized by the jury verdict alone, remain in the twilight zone, still [u]nconstitutional.

The remedial opinion ignored the liberty interests of its citizens and sees no harm in having defendants serve many more years in prison than what was authorized or constitutional, after all. defendants were guilty of something and they are by definition criminals. Instead of admitting the mistakes of the past and finding an appropriate solution, its ruling was designed for it to be limited to defendants on direct appeal and only after applying the plain error test.

The solution itself was unconstitutional as the severed sections were not unconstitutional in and of themselves. The re-writing of the guidelines from manditory to advisory, whilst a clever slight of hand, was even contrary to the intentions of Congress, who specifically designed the guidelines to bring about uniformity in sentencing, by limiting a court's discretion at sentencing.

The [r]eality is that nothing will change an [u]nconstitutional sentence but a constitutional re-sentence. For that reason alone, the remedial part of **BOOKER**, will not withstand constitutional scrutiny and challenge. The government's position on this issue is indefensable.

The district court did not violate a new rule of law created by **BOOKER**, but basic precepts rooted in common law and the Constitution. The

[F]rames knew that the government by its very nature cannot be trusted and tends to intrude on the rights and freedoms of its people. They were particulary cognizant of this fact when they adopted the Bill of Rights. Judges are sworn to protect the Constitution and it falls upon the judiciary to be guardians of these fundemental rights.

The Constitution has steadily travelled down the slippery slope to a point where the government can indict a ham sandwich. The Grand Jury's traditional role has been usurped by the probation officer who prepares a pre-sentence report in lieu of an indictment. The defendant is then punished on facts by ambush, not found by his peers and neighbours but by a judge sitting alone who has no discretion but to impose the maximum punishment. The government only has to meet a burden of a preponderance of the evidence and the court invariably declares that the government has met it's burden by adopting the findings in the pre-sentence report. Objections to the findings are waived away under the negligible burden of proof. The defendant is now found guilty a second time and sentenced to many more years on facts neither heard by the Grand Jury, Petit Jury or authorized by either. If we still have a fair criminal justice system, then it's only in Wonderland.

This court should sua sponte void the illegal part of movant's sentence 8 points and re-sentence movant within the defined range of level 32, category one and being 121-151 months. In the event the court finds that the maximum sentence is the aggregate maximums of both counts, then the authorized defined range is 121-184 months. The only cases the government can cite on the issues presented that are on all fours is **BLAKELY** and **BOOKER**. Jurisdiction is the [a]rcilles [h]eel of the remedial solution.

In a mandatory sentencing system, the court either exceeded its jurisdiction to sentence movant above the maximum authorized by the jury

-26-

In a mandatory sentencing system, the court either exceeded its jurisdiction to sentence movant above the maximum authorized by the jury verdict alone and the guidelines, or alternatively, had absolute no jurisdiction to conduct a second trial. Movant has now been incarcerated since early 1994 and including good time credit has served approximately 152 months. Movants' detention should be terminated as he has already served the maximum sentence authorized by the jury's verdict in COUNT 1. There is no doubt that the two counts involved the same victim and two or more acts or transactions connected with the common purpose and therefore are required to be grouped under §§3D1.1 and 3D1.2. In the alternative, if the court applies the aggregate rational to comply with §5G1.2 then movant should be resentenced within the defined range authorized by the jury and the guidelines of 121-184 months.

Respectfully submitted,

This __18th__ day of March, 2005.

*Morris Ramsey*
MORRIS RAMSEY, pro se
# 09278-002, 3AU
FCI Yazoo City,
P.O.Box 5000,
Yazoo, MS.39194

### CERTIFICATE OF SERVICE

I, MORRIS RAMSEY, certify that a copy of the foregoing was served by pre-paid U.S.Mail, by depositing the same in mailbox provided by FCI Yazoo, on this the __18th__ day of March, 2005.

Mr. Lewis Franklin Sr.,
Assistant United States Attorney,
P.O.Box 197,
Montgomery, AL. 36192

*Morris Ramsey*
MORRIS RAMSEY